# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| STEPHANIE SHYNETTE CURRIN,<br><br>Plaintiff,<br><br>v.<br><br>DR. MISO MILOSLAVIC,<br><br>Defendant. | Case No. 18-CV-577-JPS<br><br>**ORDER** |

Plaintiff, a Wisconsin prisoner, was formerly incarcerated at the Robert E. Ellsworth Correctional Center ("RECC"), where Defendant Miso Miloslavic worked as a physician. Plaintiff claims that Defendant's care for her chronic knee pain was so deficient as to violate her constitutional right to adequate medical care. Plaintiff was allowed to proceed on a claim that Defendant violated her rights under the Eighth Amendment. (Docket #8). Defendant has filed a motion for summary judgment, (Docket #25), and that motion is fully briefed, (Response, Docket #34; Reply, Docket #39).

According to Defendant, the material facts are as follows. *See* Defendant's Proposed Findings of Fact, (Docket #27). Plaintiff injured her knee while she was incarcerated at Taycheedah Correctional Institution ("TCI"). In the years she spent at TCI after the injury, Plaintiff received treatment for her knee pain in the form of anti-inflammatory medication, physical therapy, and a steroid injection. When she arrived at RECC in March 2017, Plaintiff complained to a nurse that her pain was not abated by the prior treatments at TCI. Plaintiff said she felt her injury was a meniscus tear. The nurse scheduled Plaintiff for an appointment with Defendant that same month. Plaintiff was also provided a knee brace.

At that first appointment, Defendant diagnosed Plaintiff with tendonitis, not a meniscus tear. He ordered the standard plan of care for that injury, which was a continuation of physical therapy, a topical muscle rub cream, and anti-inflammatories. Plaintiff saw Defendant again in May, and began her physical therapy in June. The therapy was discontinued just two months later because Plaintiff failed to show for two consecutive appointments.

In September, Plaintiff complained that her knee was buckling. Defendant ordered an MRI to determine if the treatment plan was adequate to address Plaintiff's injury. In December, prior to the MRI, Plaintiff met with a nurse and asked for knee surgery. The nurse tested Plaintiff's mobility and determined that surgery was not immediately necessary, and instead referred Plaintiff back to Defendant's care.

The MRI was conducted in February 2018. It showed that Plaintiff had a condition called runner's knee, wherein the cartilage deteriorates due to overuse. The MRI confirmed that Plaintiff did not have a meniscus tear. The standard plan of care for runner's knee was precisely what Defendant had already ordered for Plaintiff.

In March, Plaintiff had another appointment with Defendant, and again requested surgery. Defendant did not agree that surgery was necessary. He instead altered Plaintiff's medication slightly, ordered a second steroid injection, and ordered Plaintiff to be seen by a specialist. Plaintiff also complained of plantar fasciitis, *i.e.*, pain and inflammation in the foot, which would be treated by the same course of treatment already prescribed for her knee. In addition, Defendant ordered shoe inserts and occupational therapy for Plaintiff's foot pain. Plaintiff saw a nurse again

later that month, complaining of knee and foot pain, but the nurse saw nothing which warranted changing Defendant's treatment plan.

Plaintiff then saw Benjamin Lasee ("Lasee"), an orthopedic specialist, in April. Lasee evaluated Plaintiff and reached the same conclusion as Defendant—that Plaintiff had runner's knee. Lasee felt that a conservative course of treatment, including anti-inflammatories, steroid injections, and physical therapy, was most appropriate. This matched Defendant's opinion.

Plaintiff saw Defendant again in May. His examination did not reveal any issues that were not already accounted for. He ordered some additional treatment for Plaintiff's foot pain and an x-ray, which showed nothing out of the ordinary. Plaintiff did additional physical therapy for about a month between May and June.

Plaintiff largely agrees with this view of the facts. *See* Plaintiff's Response to Defendant's Proposed Findings of Fact, (Docket #35). She offers only minor quibbles with various issues with her treatment and the topics discussed in her medical appointments. *Id.* Instead, the thrust of her argument is legal. Specifically, Plaintiff asserts that Defendant's conservative treatment plan was the same that she received at TCI, and that throughout her time at both institutions, her knee condition became progressively worse and her pain did not lessen. Plaintiff contends that Defendant knew the treatment plan was not effective but continued it anyway. Plaintiff also claims that her plantar fasciitis was caused by the need to compensate for her knee injury. Finally, Plaintiff states that Defendant delayed sending her to a specialist.

To prove her right to relief under the Eighth Amendment, Plaintiff must show that Defendant was deliberately indifferent to her serious

medical needs. *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010). Deliberate indifference equates to intentional or reckless conduct, not mere negligence. *Id.* It occurs only when a defendant realizes that a substantial risk of serious harm to the prisoner exists, and then disregards that risk. *Id.*

"Neither medical malpractice nor mere disagreement with a doctor's medical judgment is enough to prove deliberate indifference." *Id.* at 441. Further, "[a] medical professional is entitled to deference in treatment decisions unless no minimally competent professional would have so responded under those circumstances." *Sain v. Wood*, 512 F.3d 886, 894–95 (7th Cir. 2008) (quotation omitted). Rather, a medical professional is deliberately indifferent only when his decisions are "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Id.* at 895 (quotation omitted).

The facts of this case can lead to no other conclusion than that Defendant exercised his careful medical judgment in evaluating Plaintiff and forming a treatment plan for her injuries. He followed the standard plans of care for Plaintiff's injuries and adapted them as he felt was appropriate in light of her continuing complaints. Far from disregarding any risk to Plaintiff's health, Defendant provided Plaintiff with considered and ongoing treatment. That Plaintiff wanted more or different treatment is no evidence that Defendant's care was so woefully inadequate as to violate her constitutional rights. *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014) ("Disagreement between a prisoner and his doctor, or even between two medical professionals, about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation.").

Moreover, Plaintiff is not a doctor herself and has marshalled no competent evidence to undermine Defendant's medical judgment as to the appropriate course of her treatment. Indeed, the only other medical expert involved in this case, Lasee, agreed with Defendant's diagnosis and his conservative treatment plan. Plaintiff's "mere disagreement with [Defendant's] medical judgment" is not enough to raise a triable issue of fact on a claim of deliberate indifference. *Berry*, 604 F.3d at 441. In other words, Plaintiff has failed to adduce evidence that Defendant's treatment plan was so poor that his decision to adopt it was not motivated by his medical judgment at all. *Sain*, 512 F.3d at 895.

In light of the foregoing, the Court will grant Defendant's motion for summary judgment and dismiss this action with prejudice.

Accordingly,

**IT IS ORDERED** that Defendant's motion for summary judgment (Docket #25) be and the same is hereby **GRANTED**; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED with prejudice**.

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 17th day of January, 2020.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge